[Docket No. 83.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

UNITED STATES OF AMERICA,

v.

HANIEFF TRUSTY,

Defendant.

Crim. No. 20-543 (RMB)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge:**

Defendant Hanieff Trusty asks this Court to dismiss Count II of the indictment charging him with possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). [Docket No. 1 ("Indictment").] Trusty argues § 922(g)(1) is facially unconstitutional and, as applied, violates his Second Amendment rights. The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Local Civil Rule 78.1, applicable to criminal cases under Local Criminal Rule 1.1. For the reasons set forth below, the Court **DENIES** Trusty's motion.

**I.    BACKGROUND[1]**

Camden County Police arrested Trusty while on a drug-related patrol. [Docket No. 89 Gov't Mem. of Law in Opp'n to Def. Mot. to Dismiss ("Gov't Br.") at 1.] Throughout the day on January 14, 2020, Camden County Police Officer Robles

---

[1] The Court takes the following allegations from the parties' briefs and the indictment filed in this matter.

watched Trusty's car visit known drug sets multiple times. [*Id*. at 1–2.] Each time Trusty encountered Officer Robles's patrol vehicle, he sped away. [*Id*. at 2.] When Trusty failed to stop at a stop sign and made a left turn without using his turn signal, Officer Robles initiated a traffic stop. [*Id*. at 1–2.] Officer Robles observed Trusty lifting his right arm to place something in the back seat of the vehicle. [*Id*. at 2.] Suspecting that Trusty was engaged in narcotics activity and was hiding something in the vehicle, Officer Robles requested backup and a K-9 unit. [*Id*.] When the K-9 unit arrived, the officers instructed Trusty to step out of the vehicle. He resisted those instructions at first but eventually complied. [*Id*.] Searching the vehicle, the officers found a clear sandwich bag with 75 white wax folds containing a white powdery substance and 32 orange translucent plastic folds containing a hard rock-like substance. [*Id*.] Officers also found a loaded .40 caliber semi-automatic firearm in the right-rear passenger seat. [*Id*.] Further investigation determined that the firearm was stolen. [*Id*. at 3.]

  Trusty has four prior state felony convictions for drug offenses. In 2005, he pled guilty to third-degree manufacture, distribution, or possession with intent to distribute heroin in violation of N.J.S.A. §§ 2C:35-5A(1) and 2C:35-5B(3). [*Id*. at 3–4; Docket No. 83-1, Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Br.") at 2–3.] He was sentenced to probation which was revoked when, in 2007, Trusty pled guilty to two counts of third-degree possession of heroin in violation of N.J.S.A. § 2C:35-5(B)(3), [Gov't Br. at 4; Def.'s Br. at 3], and one count of third-degree possession of a controlled substance within 1,000 feet of a school, in violation of N.J.S.A. § 2C:35-7, [*id*.]. He received a sentence of four years imprisonment with a term of 18 months of

parole ineligibility on the possession charges, and a term of four years imprisonment with a term of two years of parole ineligibility on the school zone possession charge. [Gov't Br. at 4.] He was released from prison custody into a halfway house in 2009 where he completed his sentence later that year. [Def.'s Br. at 2 n.2.]

A federal grand jury returned a two-count indictment charging Trusty with possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count I), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count II). [*See* Indictment at Counts I & II.] Defendant filed a pretrial motion to suppress evidence which requested an order "[p]ermitting him to file additional motions upon a showing of good cause." [Docket No. 57.] Prior to reassignment to this Court, [Docket No. 75], the Hon. Judge Joseph Rodriguez denied the motion to suppress but granted Defendant's request to file a motion to dismiss for good cause shown. [Docket No. 73.]

Trusty now moves to dismiss Count II of the indictment arguing that § 922(g)(1) violates the Second Amendment. He brings both facial and as-applied challenges to § 922(g)(1), arguing that the law is unconstitutional in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and the Third Circuit's decision in *Range v. Attorney General United States*, 124 F.4th 218 (3d Cir. 2024) (en banc) ("*Range II*"). [*See* Def.'s Br. at 1; Docket No. 90, Def.'s Reply Brief in Further Supp. of Mot. to Dismiss ("Def.'s Reply.") at 2.]

## II. DISCUSSION

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

To prevail on an as-applied challenge, Trusty must show that § 922(g)(1), as applied to him, violates his Second Amendment rights to keep and bear arms. *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) ("An as-applied attack … does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right."). Trusty's facial challenge "is the 'most difficult challenge to mount successfully' because it requires [him] to 'establish that no set of circumstances exists under which [§ 922(g)(1)] would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). To defeat Trusty's facial challenge to § 922(g)(1), "the Government need only demonstrate that [the law] is constitutional in some of its applications." *Id.* at 693.

### A. Developments in Second Amendment Law

The Second Amendment of the United States Constitution protects "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II. In *District of Columbia v. Heller*, the Supreme Court of the United States held the Second Amendment

4

guarantees individuals the right to keep and bear arms for self-defense. 554 U.S. 570, 592 (2008). In doing so, the Court explained that felon disarmament laws, like § 922(g)(1), are "presumptively lawful" and that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626, 627 n.26. Two years later, the Supreme Court ruled that the Second Amendment applies equally to the federal government and states, finding that "the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010). The Court again repeated its assurances from *Heller*: "our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626–27).

In *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court held the Second Amendment applies outside the home and protects law-abiding citizens' right to carry firearms in public for self-defense. *Bruen* articulated "the governing methodology for assessing whether modern firearm regulations comport with the Second Amendment." *Pitsilides v. Barr*, 128 F.4th 203, 208 (3d Cir. 2025). That analysis has two steps. First, a court asks whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If so, "the Constitution presumptively protects that conduct," *id.* and the court must proceed to step two. At step two, "[t]he government must [] justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm

5

regulation." *Id*. The challenged regulation need only match a "representative historical *analogue*"; the government does not need to identify a "dead ringer" or a "historical twin." *Id*. at 30. (emphasis in original).

While *Bruen* shook up Second Amendment jurisprudence, several Justices again clarified that *Bruen* did not disturb the validity of felon disarmament laws. *Id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns."); *see also id.* at 80–81 (Kavanaugh, J., concurring) (explaining that "the Second Amendment allows a variety of gun regulations" and that *Heller* and *McDonald* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons") (internal quotation marks and citation omitted); *id.* at 129–30 (Breyer, J., dissenting.) (understanding *Bruen* "to cast no doubt on … *Heller*'s holding" that felon disarmament laws are "presumptively lawful").

Last year, in *United States v. Rahimi*, 602 U.S. at 680, the Supreme Court "clarified the extent to which modern firearm restrictions need to match historical analogues." *Pitsilides*, 128 F.4th at 209. "[T]he appropriate analysis," the Court explained, is not whether the challenged regulation is a close-enough match to a historical one, but instead "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition" by focusing on "the principles underlying the Second Amendment." *Rahimi*, 602 U.S. at 692; *see also id.* at 740 (Barrett, J.) ("Historical regulations reveal a principle, not a mold."). In *Rahimi*, that

principle, taken from pre-Founding and Founding-era surety and going armed laws, was that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Rahimi*, 602 U.S. at 698 (upholding constitutionality of 18 U.S.C. § 922(g)(8)(C)(i) which prohibits anyone found to "represent[] a credible threat to the physical safety of another" from possessing a firearm). Again, the Court reiterated what it said in *Heller*, and repeated in *McDonald* and *Bruen*: felon disarmament laws "are presumptively lawful." *Id.* at 682 (internal quotation marks and citation omitted).

Following *Rahimi*, the Supreme Court vacated many circuits' decisions addressing the constitutionality of § 922(g)(1). That included the Third Circuit's decision in *Range v. Attorney General United States of America* ("*Range I*"), 69 F.4th 96 (3d Cir. 2023) (en banc), *cert. granted, judgment vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024). In *Range I*, the Third Circuit held that § 922(g)(1) was unconstitutional as applied to an individual with one prior non-violent felony conviction from thirty years ago (food-stamp fraud) and who had, since that conviction, lived a law-abiding life. *Id.* at 101–03. With the benefit of *Rahimi*, the Third Circuit reached the same conclusion in *Range II*. 124 F.4th at 222. Range was among "the people" protected by the Second Amendment despite his prior felony conviction. *Id.* at 228 (rejecting Government's arguments that felons are not among "the people" protected by the Second Amendment). And, as applied, § 922(g)(1) would unconstitutionally interfere with that right because the Government failed to identify a historical analogue to

regulate people, like Range, who were not dangerous from owning a firearm. *Id*. at 230–31.

Distilled, *Bruen*, *Rahimi*, and *Range II* confirm that "disarmament is justified as long as a felon continues to 'present a special danger of misusing firearms.'" *Pitsilides*, 128 F.4th at 210 (quoting *Rahimi*, 602 U.S. at 698) (cleaned up). Indeed, "[a]s an original matter, the Second Amendment's touchstone is dangerousness." *Folajtar v. Att'y Gen.*, 980 F.3d 897, 924 (3d Cir. 2020) (Bibas, J., dissenting); *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting) ("[L]egislatures have the power to prohibit dangerous people from possessing guns."); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam) ("The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'" (quoting *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting))); *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024) ("[O]ur nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous."); *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024) ("Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed."). And, so, because the Second Amendment's touchstone is dangerousness, when presented with an as-applied challenge to felon-in-possession laws like § 922(g)(1), a court "must consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament." *Pitsilides*, 128 F.4th at 212;

*Williams*, 113 F.4th at 660–61 (as applied challenge to § 922(g)(1) on motion to dismiss indictment requires "fact-specific" "dangerousness determination" which will "depend[] on the unique circumstances of the individual defendant").

### B. Section 922(g)(1) Is Constitutional As Applied To Trusty

The Court has little difficulty in finding that, despite Trusty's prior felonies, he remains among "the people" that the Second Amendment protects. *See Range II*, 124 F.4th at 228 (finding convicted felon among "the people" that the Second Amendment protects and rejecting Government's arguments to the contrary); *accord Williams*, 113 F.4th at 649 (finding convicted felon among the "people" within the Second Amendment's meaning, and observing that "[n]othing in the Second Amendment's text draws a distinction among the political community between felons and non-felons—or, for that matter, any distinction at all"). And § 922(g)(1) punishes Trusty for quintessential Second Amendment conduct: possessing a firearm. *United States v. Moore*, 111 F.4th 266, 269 (3d Cir. 2024). Thus, "the Government bears the burden of justifying its regulation" by identifying a sufficiently similar historical analogue. *Id.* (citations omitted); *see also Williams*, 113 F.4th at 650 (finding § 922(g)(1) "burdens" the Second Amendment "right to possess a gun" (citation and internal quotation marks omitted)); *cf. United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) ("Marijuana user or not, Paola is a member of our political community and thus has a presumptive right to bear arms. By infringing on that right, § 922(g)(3) contradicts the Second Amendment's plain text.").

9

But although Trusty can make his threshold showing, the Government has met its burden of showing that enforcing § 922(g)(1) against Trusty adheres to the principles underlying the Second Amendment, consistent with this Nation's history and tradition. Trusty can be constitutionally disarmed, as the Third Circuit has held, because his prior convictions pose a danger to the physical safety of others. *See Pitsilides*, 128 F.4th at 212–13 (citing *Rahimi*, 602 U.S. at 692). That principle, as the Government notes, [*see* Gov't Br. at 15–22], is well-supported by history and tradition dating back to English common law and the Pre-Founding era. *See Williams*, 113 F.4th at 657 (collecting sources and finding that "Governments in England and colonial America long disarmed groups that they deemed to be dangerous."); *Jackson*, 110 F.4th at 1127 (collecting sources and finding that "legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a danger of misuse by those who deviated from legal norms"); *see also Koons v. Platkin*, 673 F. Supp. 3d 515, 562–69 (D.N.J. 2023) (Bumb, J.) (reviewing English common law, medieval English acts and government decrees, colonial disarmament laws, state constitutional convention proposals, post-ratification disarmament laws, and reconstruction era disarmament laws and finding that this Nation has a historical tradition of disarming dangerous individuals).

Trusty's four prior drug convictions were "not necessarily violent," but his right to possess a firearm can still be constitutionally limited because drug dealing inherently "pose[s] a significant threat of danger." *Pitsilides*, 128 F.4th at 213 (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting)); *Williams*, 113 F.4th at 659 (finding § 922(g)(1)

10

facially constitutional and as applied to defendant with prior drug convictions because "drug trafficking" "inherently poses a significant threat of danger"); *Jackson*, 110 F.4th at 1125–26 (similar); *Porter v. United States,* 2023 WL 6366273, at *7 (D.N.J. Sept. 28, 2023) (rejecting as-applied challenge to § 922(g)(1), finding defendant's prior drug trafficking convictions, and recent arrest "show that he poses a danger to society"); *United States v. Wilkson*, 2024 WL 1506825, at * 6–7 (E.D. Ky. Apr. 8, 2024) (rejecting defendant's as-applied challenge to § 922(g)(1) and explaining that drug trafficking is "inherently dangerous"); *see also United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985) ("Congress intended to equate drug trafficking with danger to the community."). Indeed, courts "within the Third Circuit have determined that an underlying drug dealing conviction [is] sufficient to establish a criminal defendant's dangerousness." *United States v. Cooper*, 2025 WL 611044, at *2 (E.D. Pa. Feb. 25, 2025) (collecting cases).

Here, Trusty has four prior felony convictions for drug offenses, including a conviction for manufacturing, distributing, or possessing heroin with an intent to distribute, and another for drug possession within 1,000 feet of a school zone. "These felonies, consistent with the above history and traditions of this nation, justify Defendant's disarmament." *United States v. Boone*, 2024 WL 965146, at *8 (D.N.J. Mar. 6, 2024) (holding § 922(g)(1) constitutional as applied to defendant with "multiple prior drug trafficking felonies, two of which occurred on or near school property"); *United States v. Newkirk*, 2024 WL 3518109, at *8 (D.N.J. July 23, 2024) ("Defendant has previously been convicted of drug distribution on or within 1,000 feet

of school property … making him analogous to the type of person who could be deemed a threat to the public order and peace who historically could have been disarmed as such.").

Trusty argues that his individual circumstances—specifically, the fact that his four prior convictions date back over a decade before his 2020 arrest—mean that § 922(g)(1) cannot constitutionally apply against him. [Def.'s Reply at 23; *see also Pitsilides*, 128 F.4th at 213 (requiring courts adjudicating as-applied challenges to § 922(g)(1) to consider individualized circumstances including "post-conviction conduct indicative of dangerousness"); *Williams*, 113 F.4th at 657–58 (similar); *Range II*, 124 F.4th at 232 (finding no record evidence that Range "pose[d] a physical danger to others"). The Court disagrees. In *Pitsilides*, a declaratory judgment action brought by a felon seeking prospective protection to possess a firearm, the Third Circuit remanded for further factual development into the plaintiff's individualized circumstances because his prior gambling offenses were, alone, not enough to demonstrate his dangerousness. *Pitsilides*, 128 F.4th at 213. And in *Range II* (also a declaratory judgment action), the plaintiff's decades-old conviction for making a false statement to obtain food stamps did not involve any threats of physical danger. 124 F.4th at 231–32. Here, Trusty's prior drug offenses *were* dangerous because *drug dealing* is inherently dangerous. *See Pitsilides*, 128 F.4th at 213; *Williams*, 113 F.4th at 559 (categorizing drug trafficking as "a serious offense that, in itself, poses a danger to the community" (citation omitted)). It is Trusty's burden to show that his individualized circumstances do not make him a danger to the community. *See Williams*, 113 F.4th at

661 (burden on defendant to prove that he does not present a danger based on his individualized circumstances); *see also cf. United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam) (explaining that in order for defendant to rebut presumption of detention under Bail Reform Act, he must introduce "some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community"). The Court finds that he has not done so by relying on the gap in time between his prior drug offense and the instant charges. *See Cooper*, 2025 WL 611044, at *2 (denying motion to dismiss indictment and finding that prior drug conviction dating back nearly twenty years before § 922(g)(1) arrest was sufficient to establish defendant's dangerousness such that § 922(g)(1) was constitutional as applied).

      Section 922(g)(1) is constitutional as applied to Trusty because, "consistent with this Nation's historical tradition of firearm regulation as applied to individuals, like Defendant, who have sustained prior felony convictions for drug trafficking," those drug felonies make him a danger to the community. *Boone*, 2024 WL 965146, at *7. That finding also requires the conclusion that § 922(g)(1) is facially constitutional. *Salerno*, 481 U.S. 739, 745; *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring) (felon-in-possession prohibitions are "presumptively lawful") (quoting *Heller* 554 U.S. at 626–27 & n.26)).

13

### III. CONCLUSION

For the above reasons, the Court will **DENY** Defendant Hanieff Trusty's Motion to Dismiss Count II of the Indictment. [Docket No. 83.] An accompanying Order of today's date shall issue.


Dated: March 17, 2025                                  <u>s/Renée Marie Bumb</u>
                                                       RENÉE MARIE BUMB
                                                       Chief United States District Judge